## McCORMICK v. McCARTON.

(Supreme Court, Appellate Division, First Department. June 10, 1904.)

1. POLICEMEN'S ENDOWMENT ASSOCIATION—CONSTITUTION—BENEFIT ON DISMISSAL FROM FORCE—PUBLIC POLICY.

  The provision of the constitution of a police benevolent society of the city entitling members of the association to receive a pecuniary benefit on dismissal from the force is against public policy, and void, especially in view of Greater New York Charter (Laws 1901, pp. 127, 129, c. 466), §§ 300, 302, conferring on members of the police force permanent positions, and forbidding the dismissal of a member until written charges are preferred against him, and until such charges have been heard by the police commissioner, or one of his deputies, on reasonable notice to the accused member, and other provisions of law, giving an officer dismissed the right of appeal to the courts to review the action of the commissioner.

Appeal from Appellate Term.

Action by Thomas McCormick against Francis A. McCarton, as president of the Police Sergeants' Endowment and Benevolent Society of the City of New York. From a judgment of the Appellate Term (86 N. Y. Supp. 1140) affirming without opinion a judgment for defendant, plaintiff appeals. Affirmed.

The opinion of the Municipal Court of the borough of Manhattan is as follows (Worcester, J.) :

  This action is brought against the defendant as president of the Police Sergeants' Endowment and Benevolent Society of the City of New York. The cause of action alleged is that the plaintiff, because he has been dismissed from the police department, is entitled, under the by-laws of the defendant society, to a benefit of three hundred and fifty dollars ($350), payable from the society's treasury. At the close of the plaintiff's proof, his complaint, on motion of the defendant's counsel, was dismissed on the ground that the contract proved was contrary to public policy. The plaintiff's counsel thereupon moved generally upon the minutes for a new trial.

  The Police Sergeants' Endowment and Benevolent Society of the City of New York is an unincorporated association organized in the latter part of the year 1898. Its object was to secure to its members the benefit of a benefit fund, and to take such action as might be deemed necessary to promote their interests. Membership in the society is limited to sergeants of police in the New York police department. Under article 5 of the constitution of the society, as originally adopted, a benefit of two hundred and fifty dollars ($250) was provided to be payable to a member, or his designated beneficiary, upon his death, or upon his retirement or dismissal from the police force. By a subsequent amendment, adopted the 11th day of December, 1900, the benefit payable upon death or dismissal from the force was increased to three hundred and fifty dollars ($350), and the benefit payable upon retirement from the force was abolished. Conceding that the plaintiff was then a member "in good standing with the society"—which, from the evidence, is doubtful—he was, some time subsequent to October, 1902, and less than three months thereafter, dismissed from the police force of the city of New York, after a trial, at which he was present, and upon written charges. Upon plaintiff's objection the defendant's counsel was not allowed to cross-examine the plaintiff to show the reason of his dismissal. He now brings this action to recover three hundred and fifty dollars ($350) as the benefit to which he claims to have become entitled by reason of this dismissal.

  It seems to me that the agreement to pay a benefit to the plaintiff upon dismissal from the police force was contrary to public policy, and void. Under section 302 of the present charter of the city of New York (Laws 1901, c. 466, p. 129) the police commissioner is authorized to dismiss from the force any member who shall be convicted by him or by any court of a criminal offense,

neglect of duty, or violation of rules. Section 300 further provides that no such dismissal shall be made save after a public hearing, and upon written charges against the alleged delinquent. All dismissals from the force of policemen guilty of illegal or willful neglect of duty are effected by virtue of these provisions, and, "as every willful neglect of duty by a public officer is a misdemeanor" (People ex rel. Fitzpatrick v. French, 32 Hun, 118), the power of the police commissioner to dismiss may be briefly described as a power to dismiss for crime. People ex rel. Fitzpatrick v. French, supra; People ex rel. Shaler v. The Mayor, 52 Hun, 483, 5 N. Y. Supp. 538; People ex rel. Kopp v. French, 102 N. Y. 583, 7 N. E. 913. The agreement between the society and the plaintiff to give him a benefit in case of dismissal from the force is, therefore, in substance, an agreement to indemnify him against the consequences of crime or of neglect of a public duty. Considering the by-laws, however, merely as an agreement of indemnity, it is subject to a like condemnation as opposed to public policy. As is said in American and English Encyclopedia of Law, vol. 16, p. 170:. "There can be no doubt of the invalidity of a contract by which one party undertakes to indemnify the other against the consequences of an act which is illegal, and which the parties know to be so, because such a contract is necessarily against public policy." In accord with this rule, it has been held, for example, that a bond to indemnify executors against the consequence of a devastavit by them of trust funds is void as against public policy. Moss v. Cohen, 11 Misc. Rep. 184, 32 N. Y. Supp. 1078; affirmed, 15 Misc. Rep. 108, 36 N. Y. Supp. 265. Upon the same principle it has been held that a policy of insurance upon lottery tickets was void as against public policy. Mount v. Waite, 7 Johns. 434. Similarly it is settled that policies of insurance upon goods kept or a voyage undertaken in violation of the law of the land is contrary to public policy, and void. As is said in Kelly v. Home Insurance Company, 97 Mass. 288: "A policy of insurance against loss by fire on intoxicating liquors kept by the assured for sale in violation of law is void. When the direct purpose of the contract is to effect, advance, and encourage acts in violation of law, it is void." Or, to quote from the Commentaries of Chancellor Kent (3 Kent, Com. 262): "Insurance on a voyage undertaken in violation of a blockade or of an embargo of the provisions of a treaty is illegal, whether the policy be on freight or goods embarked in illegal traffic. The insurance on the property intended to be imported or exported contrary to law of the place where the policy is made or sought to be enforced is void. The illegality of the voyage in all cases voids the policy; and the voyage is always illegal when the goods or freight are prohibited, or the mode of its prosecution violates the provisions of a statute." Or, to quote from the well-considered opinion in Richardson v. Maine Fire Ins. Co., 6 Mass. 102, 4 Am. Dec. 92: "When the sovereign of the country to which the ship belongs shall prohibit his subjects from trading with a foreign country or port, a voyage to that country for the purpose of trade is illicit, and all insurance on said voyage by his subjects are void, whether the assured have or have not knowledge of the prohibition. For the law will not allow any effect to a contract made to protect a traffic which it has prohibited." If the law will not allow any effect to a contract made to indemnify for the loss of goods engaged in an illegal traffic, it certainly will not allow any effect to a contract made to indemnify for the loss of a public office as a consequence of acts which are contrary to law and to public interest.

The astuteness of the courts to declare void contracts which militate against public welfare is illustrated by many of our leading decisions. Thus it has been held in Gray v. Hook, 4 N. Y. 449, that an agreement between two applicants for office, whereby one is to withdraw in favor of the other, is void; that a bond of indemnity against taxes, given to induce a taxpayer to vote for bonding a town, is void as against public policy (Dean v. Clark, 80 Hun, 80, 30 N. Y. Supp. 45); that an agreement between the plaintiff, an officer in the customhouse, and the defendants, whereby the former wants to obtain a certain compensation for procuring the returns of duties illegally exacted by the collector of the port of New York, was void as against public policy (Satterlee v. Jones, 3 Duer, 102); that agreements in restraint of competition at a public auction are void as contrary to the public interest (People v. Stephen, 71 N. Y. 527; Coverly v. Terminal Warehouse Co., 70 App. Div. 82, 75 N. Y. Supp. 145). The motive which may have induced the agreement between the society and

the plaintiff is immaterial. The law will look at the principle and tendency of the contract, and not at the intention with which it was formed. As is set forth in Richardson v. Crandall, 48 N. Y. 348, 362: "The acts of public officers in taking securities are condemned because they are against the general policy of the law. It matters not that the motives of the officers were good and humane if the acts are of such a character as tend, if countenanced, to oppression or a lack of performance of official duty. In all cases where contracts are claimed to be void as against public policy, it matters not that any particular contract is free from any taint of actual fraud, oppression, or corruption. The laws look to the general tendency of such a contract. The vice is in the very nature of a contract, and it is condemned as belonging to a class which the law will not tolerate."

The contention of the plaintiff that dismissal from the force is purely a matter of internal discipline, and not connected with the interest of the public at large, is fallacious. As has already been pointed out, the power of the commissioner to dismiss for cause is limited to acts which are contrary to law or a breach of public duty. The public interest is vitally connected with the efficiency of the police department, and the protection of the property and lives of the citizens of the city is vitally concerned in the full performance of duty by every member of the force. As it is said in People ex rel. Fitzpatrick v. French, 32 Hun, 112, 119: "Nothing can be more important than a competent and faithful police force in our city; and nothing, therefore, is more necessary than that the heads of the departments should be clothed with the most ample and summary authority upon conviction to remove members of the force who are guilty of any illegal offense or of acts dangerous to the morals or peace of the public." In the recent case of People ex rel. Clifford v. Scannell, 74 App. Div. 406, 77 N. Y. Supp. 704, where a mutual benefit association of firemen in the city of New York had connected with it "a legislative committee" for the purpose of procuring legislation for the benefit of the members of the fire department, the question presented was whether a meeting of the society, called for the purpose of directing the committee to take certain steps, was lawful, and afforded protection to the members in case of dismissal from the force because of participation in the meeting. The court said: "It is readily seen that organizations of such a character, no matter by what name they are called, or how they act, are distinctly inimical to the good of the department, are distinctly subversive of discipline, and, followed to every logical conclusion, would result in the destruction of the efficiency of the force. Organizations of such a character for such a purpose are opposed to a sound public policy, and distinctly violate the provisions of the act for the government of the department."

For these reasons the motion for a new trial must be denied.

Argued before HATCH, McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Louis J. Grant, for appellant.
Charles H. Tuttle, for respondent.

INGRAHAM, J. It appears that some time in the year 1899 a voluntary association composed of the sergeants of police of the city of New York was organized, of which the defendant was president. A constitution was adopted, which provided that the object of the society was to secure to its members the benefit of an endowment and benefit fund, to be applied according to the provisions of the constitution and by-laws, and to take such action as might be deemed necessary to promote the interests of the members of the society as individuals and as officers; that sergeants of police of the city of New York were eligible to initiation and to retain active membership; that upon the dismissal from the police force of any member of the society who was in good standing with the society at the time

of such dismissal he should, within 30 days, receive from the treas-
urer of the society the sum of $250; that within 10 days after receipt
of official notice of the death of a member of the society who shall
have been at the time of his death in good standing with the society,
the treasurer of the society shall pay to such person as said member
may have designated as his beneficiary the sum of $250. By a reso-
lution dated December 11, 1900, the amount payable upon a dismiss-
al from the force or on the death of a member was raised from $250
to $350, and no payment was to be made upon the retirement of a
member of the society as a police officer. The constitution further
provided that the initiation fee should be $1, and the dues should be
$6 a year, payable monthly in advance at the regular monthly meet-
ings; that "any member of the society who is in arrears as to pay-
ments of dues for three months is not in good standing. Whenever
any member of the society may become two months in arrears in
payment of his dues, the financial secretary will send such member
a written notification of his indebtedness, and, if such member does
not pay his dues on or before the regular monthly meeting subse-
quent to notification by the financial secretary, he shall cease to be a
member of the society, and his name shall be dropped from the rolls."
It appeared that the plaintiff became a member of this society in the
year 1899, and paid his dues up to the month of June, 1902; that
in October, 1902, he received notice that he had been dropped from
the society for nonpayment of dues, whereupon he sent to the finan-
cial secretary $2, which was returned to him upon the ground that
he had ceased to be a member of the society. The plaintiff testified
that he asked the president of the society whether, if he paid $25
under protest, he would be admitted as a member of the organization,
but was informed that it would do no good, as he would have to
be three months in good standing. On the 25th day of November,
1902, the plaintiff was dismissed from the police department upon
charges, and subsequently demanded from the defendant payment of
the sum of $350 that he claimed to be entitled to receive under the
constitution, which was refused; whereupon he brought this action
to recover that amount.

Upon the trial in the Municipal Court, at the close of the plaintiff's
case, the complaint was dismissed upon the ground that this pro-
vision of the constitution by which a member of the police force was
to receive a gratuity upon his dismissal from the police force for a
violation of his duty was against public policy, as a premium for or
an indemnity to the officer for a failure to perform his duties as a
police officer; and from the judgment dismissing the complaint the
plaintiff appealed to the Appellate Term, where the judgment was
affirmed, and then, with leave of the Appellate Term, plaintiff ap-
pealed to this court.

It was conceded that the plaintiff was a member of this society
prior to June, 1902; that in October, 1902, he received notice that
he had been dropped from the society for nonpayment of dues; but
the plaintiff claims that such dismissal was illegal, and unauthorized
by the constitution. There was no proof that the provisions of this
article of the constitution as to notice to a member whose dues were

two months in arrears were complied with. To entitle a member dismissed from the force to a payment under this provision of the constitution of the association, he must be a member of the association "in good standing with the society at the time of his dismissal"; and the same constitution provides that "any member of the society who is in arrears as to payment of dues for three months is not in good standing." It is not disputed but that at the time of his dismissal plaintiff was in arrears for three months, and it is not at all clear that the plaintiff was still a member of the society, entitled under the constitution to the money. The case was disposed of, however, by the Municipal Court upon the ground that this provision of the constitution would not be enforced, as it was against public policy; and, as we agree with the Municipal Court, it is not necessary to determine whether the plaintiff was a member of the association at the time of his dismissal. As originally organized, the association undertook to pay to each of its members a sum of money upon the happening of one of three events—his dismissal from the force, his retirement, or his death. There could be no objection to an association organized to pay to its members a sum of money upon their retirement from the police force, or upon the death of a member of the association. By the amendment the association undertook to pay to each member an increased sum of money upon the dismissal of a member from the police force or upon his death.

The police commissioner's power to dismiss a member of the uniformed force is provided by the charter. Chapter 466, Laws 1901, p. 127, § 300, provides that:

"The police commissioner is authorized and empowered to make, adopt and enforce rules, orders and regulations for the government, discipline, administration and disposition of the police department and police force and the members thereof. He shall have power and is authorized to adopt rules and regulations for the examination, hearing, investigation and determination of charges made or preferred against any member or members of the said police force, but no member or members of the police force except as otherwise provided in this chapter shall be fined, reprimanded, removed, suspended or dismissed from the police force until written charges shall have been made or preferred against him or them, nor until such charges have been examined, heard and investigated before the police commissioner or one of his deputies, upon such reasonable notice to the member or members charged, and in such manner of procedure, practice, examination and investigation as the said commissioner may, by rules and regulations, from time to time prescribe. * * * Any member of the police force who may hereafter become insane or of unsound mind, so as to be unable or unfit to perform full police service or duty, may be removed and dismissed from the police force by the commissioner."

Section 302 of the charter (Laws 1901, c. 466, p. 129) gives the commissioner power, in his discretion, on conviction by him, or by any court or officer of competent jurisdiction, of a member of the force of any criminal offense, or neglect of duty, violation of rules, or neglect or disobedience of orders, or absence without leave, or any conduct injurious to the public peace or welfare, or immoral conduct or conduct unbecoming an officer, or any breach of discipline, to punish the offending party by dismissal from the force. The statute confers upon police officers a permanent position, subject to removal only in case of conviction for a crime, or for a violation of police

duty which renders the officer unfit to be on the force, except in.the case of an officer becoming insane, and thus incompetent to perform police duty. While possibly it is not correct to say that no officer can be removed except upon his conviction upon a criminal charge, before an officer can be dismissed from the force he must have been convicted of such a breach of discipline or such immoral conduct as to indicate a disregard of the obligations assumed upon his joining the force, and that the officer thus convicted is an improper person to be continued upon the force. This policy has been adopted as an incentive to those appointed to honestly perform the duties of their position without fear or favor, they being secure in their position so long as they retain a good character and properly perform their police duties. And, to prevent an unjust conviction by the police commissioner, the officer dismissed is given the right of appeal to the courts to review the action of the police commissioner in his dismissal. Considering this motive in securing to a police officer the retention of his position, any arrangement or agreement between the officers of the force which would tend to nullify the effect of this legislation, and to indemnify the officer for a breach of his police duty, would be void, as contravening this policy adopted by the state, and tending to render it ineffectual. If all police officers agreed to give to one who had been dismissed for a violation of police duty a part of the salary that they received for performing such duty, such an agreement would be void, as tending to nullify the object of the statute which secured a distinct benefit to an officer performing his duty, but provided for dismissal from the force as a penalty upon an officer who violated his duty. The agreement sought to be enforced in this action is one among officers of the force holding the position of sergeant, by which they agree to pay to one of their number, upon his dismissal from the force, a sum of money. The direct result of that agreement is to minimize the punishment inflicted upon an officer for a violation of his duty as such, and thus, to some extent at least, impair the effect of the law that imposes a penalty upon a member of the force for a violation of his police duty. The money that the plaintiff seeks to recover is money contributed by police sergeants who are members of this association, and it was to be paid to an officer who has been dismissed as indemnity for the penalty imposed for a violation of his police duty, when such a violation results in his dismissal from the force. That such an agreement among public officers is against public policy would seem to be clear from a mere statement of the case. That it is so is sustained by the authorities cited by the justice of the Municipal Court, upon whose opinion the Appellate Term affirmed his judgment. The fact that the amount to be paid to police sergeants who are dismissed from the force is comparatively small does not at all affect the question as to whether any agreement among police officers which would provide an indemnity for the effect of a violation of the police rules and regulations of duty, or would tend to reduce the punishment inflicted upon an officer by his dismissal, would, in its nature, be opposed to the public policy by which police officers are encouraged in the performance of their duties by making their position on the force

permanent, and allowing their dismissal only upon a conviction for an offense which involves a violation of police duty. The public welfare requires that all contracts of this character should be condemned as opposed to the policy of the state, and the courts should unhesitatingly refuse to enforce them.

It follows that the judgment appealed from must be affirmed, with costs. All concur.